UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARMEN LAUREANO-MONGE &., )
MARUIZ MARRERO-ILARRAZA )
                     )
       Plaintiffs,       )
                     )
       v.            )       3:17-cv-01173-JAW
                     )
FUNDACIÓN FRANCISCO )
CARVAJAL, INC., )
SUPERMERCADOS MAXIMO, INC., )
and INTEGRAND ASSURANCE CO., )

       Defendants.

**OMNIBUS OPINION AND ORDER**

Carmen Laureano-Monge and Maruiz Marrero-Ilarraza filed this lawsuit

against Fundación Francisco Carvajal, Inc. (FFC), Supermercados Maximo, Inc.

(SuperMax), and Integrand Assurance Co. (Integrand) alleging negligence under the

Commonwealth of Puerto Rico's general tort statute, 31 L.P.R.A. § 5141, after Ms.

Laureano-Monge fell in the Defendants' parking lot.[1]  *Compl.* (ECF No. 1).  Before

the Court are twelve motions in limine.  *Mot. in Lim. to Limit the Op. Test. of Defs.'*

*Orthopedic Expert Dr. Carlos Grovas Badrena to the Findings of His Physical*

*Examination of Pl. Carmen Laureano Monge and to Strike His "Supplementary"*

*Report* (ECF No. 93) (*Pls.' Mot. to Limit Test. of Dr. Grovas*); *Mot. in Lim. to Exclude*

---

[1]      Following stipulation by the parties, the Court entered partial judgment on March 4, 2019, to dismiss with prejudice the claims against SuperMax and Integrand as its insurer.  *Stipulation for Partial Voluntary Dismissal* (ECF No. 123); *Partial J.* (ECF No. 124).  The Court's recitation of the background of this case is restricted, therefore, to the Plaintiffs' lawsuit against FFC and Integrand as FFC's insurer.

*Medical Rs. and Dr. Aura F. Delgado* (ECF No. 138) (*Pls.' Mot. to Exclude Medical Rs.*); *Omnibus Mot. in Lim. to Exclude Defs.' Trial Witnesses and Documentary Exs.* (ECF No. 144) (*Pls.' Omnibus Mot.*); *Mot. in Lim. to Limit the Scope of Expert Orlando Fernandez's Test.* (ECF No. 146) (*Defs.' Mot. to Limit Dr. Fernandez's Test.*); *Mot. in Lim. to Exclude Answers to Written Disc. as Evid. at Trial* (ECF No. 147) (*Def.'s Mot. to Exclude Answers*); *Mot. in Lim. as to Daily Inspection Reports Identified by Pl. in the Pretrial Report* (ECF No. 148) (*Defs.' Mot. as to Inspection Reports*); *Mot. in Lim. to Exclude "Photographs of the Accident Site and Pothole" as Announced by Pls.* (ECF No. 149) (*Def.'s Mot. to Exclude Photographs*).   Federal jurisdiction is predicated on diversity of citizenship under 28 U.S.C. § 1332(a)(1).   In this Order, the Court has addressed each of the motions.

## I.   PROCEDURAL BACKGROUND[2]

### A.   Factual Background

On February 4, 2014, Ms. Laureano-Monge went grocery shopping at the SuperMax in Plaza Guaynabo, Puerto Rico.  *Compl.* ¶ 11; *Proposed Pretrial Order* at 3, 6-7 (ECF No. 128).  As Ms. Laureano-Monge was returning to her automobile with her groceries, the shopping cart that she was pushing fell into a pothole in the parking lot.  *Id.*  Subsequently, the shopping cart tipped over and Ms. Laureano-Monge fell onto the parking lot pavement.  *Compl.* ¶ 11; *Proposed Pretrial Order* at 3, 6-7.  Ms. Laureano-Monge suffered physical and mental damages after the fall and her

---

[2]    The Court assumes familiarity with the factual background of this case, and thus focuses on the relevant procedural history in this order.

granddaughter, Ms. Marrero-Ilarraza, also suffered mental damages.  *Compl.* ¶¶ 18-22; *Pls.' Mot. to Exclude Medical Rs.* at 4.

### B.     Procedural Background

Ms. Laureano-Monge and Ms. Marrero-Ilarraza initially filed a complaint in state court in Puerto Rico.  After voluntarily dismissing the state court action, the Plaintiffs filed this case on February 6, 2017, in the United States District Court for the District of Puerto Rico.  *Compl.* at 1.  FFC filed its answer on April 7, 2017. *Answer to Compl.* (ECF No. 15).

On October 26, 2018, the Plaintiffs filed motions to compel interrogatory answers and the production of documents from the Defendants.  *Pls.' Mot. to Compel Interrog. Answers from Def. Fundacion Francisco Carvajal, Inc* (ECF No. 74); *Pls.' Mot. to Compel Produc. of Docs. from Def. Fundacion Francisco Carvajal, Inc. and Def. Integrand Assurance Company* (ECF No. 75).  The Defendants responded on November 14, 2018.  *Opp'n to Mot. to Compel Interrog. Answers in Docket 74* (ECF No. 86); *Opp'n to Mot. to Compel Product. of Docs. in Docket 75* (ECF No. 87).  On January 3, 2019, the Court granted in part and denied in part the Plaintiffs' motions to compel.  *Orders* (ECF Nos. 103, 105).

On November 21, 2018, the Plaintiffs filed a motion in limine to limit the testimony of Defendants' medical expert Dr. Carlos Grovas Badrena.  *Pls.' Mot. to Limit Test. of Dr. Grovas.*  The Defendants filed their response on December 19, 2018. *Defs.' Opp'n to Pls. Mot. in Lim. to Limit the Op. Test. of Defs.' Orthopedic Expert Dr. Carlos Grovas* (ECF No. 98) (*Defs.' Opp'n to Pls. Grovas Mot.*).  The Plaintiffs replied to the Defendants' opposition on December 28, 2018.  *Pls.' Mot. to Limit Test. of Dr.*

*Grovas* at 16; *Pls. Reply to Defs.' Opp'n (DE #98) to Mot. in Lim. (DE #93)* (ECF No. 101) (*Pls. Reply to Defs.' Opp'n*). On January 9, 2019, the Court noted the Plaintiffs' additional motion submitting the deposition of Ms. Laureano-Monge as an attachment to their reply. *Mot. Submitting Tr. of Dep. of Carmen Laureano Monge* (ECF No. 108); *Order* (ECF No. 109).

On January 25, 2019, the Plaintiffs filed a motion for sanctions, claiming Defendants had failed to supplement their interrogatory answers and provide certain documents. *Pls.' Mot. for Fed. R. Civ. P. 37(b)(2) Sanctions for Defs.' Failure to Comply with Ct. Orders* (ECF No. 118). The Court referred the matter to the Magistrate Judge and the Defendants responded on February 8, 2019. *Opp'n to Pls.' Mot. for Fed. Civ. P. 37(b)(2) Sanctions for Defs.' Failure to Comply with Ct. Orders* (ECF No. 114). On February 14, 2019, the Magistrate Judge granted in part and denied in part the motion, ordering that "[b]y February 20, 2019, defendants shall send to plaintiffs once again their supplemental answers under penalty of perjury, specifying in each answer which question of which interrogatory is being supplemented." *Order* (ECF No. 119). Following stipulations by the parties, the Court entered a partial judgment to dismiss with prejudice the claims against SuperMax and Integrand as its insurer on March 4, 2019. *Stipulation for Partial Voluntary Dismissal* (ECF No. 123); *Partial J.* (ECF No. 124). On March 7, 2019, the parties filed their joint proposed pretrial order. *Proposed Pretrial Order*. The Magistrate Judge presided over the pretrial and settlement conference on April 29, 2019. *Min. Entry* (ECF No. 131).

On May 17, 2019, the Plaintiffs filed a motion in limine to exclude the Defendants' use of testimony and records from Ms. Laureano-Monge's emergency room treatment at the Puerto Rico Medical Center after her fall in Plaza Guaynabo. *Pls.' Mot. to Exclude Medical Rs.*  On May 29, 2019, the Plaintiffs submitted an omnibus motion in limine to exclude certain FFC witnesses and exhibits and filed an additional motion submitting related exhibits.  *Pls.' Omnibus Mot.*; *Mot. Submitting Exs. to Pls.' Omnibus Mot. in Lim. to Exclude Defs.' Trial Witnesses and Documentary Exs.* (ECF No. 145) (*Mot. Submitting Exs. to Pls.' Omnibus Mot.*).

On the same day, Defendant FFC submitted three motions in limine: (1) to limit the scope of the Plaintiffs' expert Dr. Fernandez's testimony, (2) to exclude the Plaintiffs' answers to written discovery as evidence at trial, and (3)  to exclude "photographs of the accident site and pothole."  *Defs.' Mot. to Limit Dr. Fernandez's Test.*; *Defs.' Mot. to Exclude Answers*; *Def.'s Mot. to Exclude Photographs*.  Also on May 29, 2019, Integrand and Restaurant Metropol Inc.[3] filed a motion in limine to exclude any daily inspection reports identified by the Plaintiffs in the pretrial report. *Defs.' Mot. as to Inspection Reports*.

On June 10, 2019, the Plaintiffs responded in opposition to FFC's motion to exclude photographs of the accident.  *Pls.' Req. for Sanctions for and Opp'n to Defs.' (DKT. 149) "Mot. in Lim. to Exclude' Photographs of the Accident Site and Pothole' as announced by Pls."* (ECF No. 156) (*Pls.' Opp'n to Defs.' Mot. to Exclude Photographs*).

---

[3]     The Defendants filed this motion as Integrand and Restaurant Metropol.  The Court is at a loss as to Restaurant Metropol, Inc.'s involvement in this case.  To the Court's knowledge Restaurant Metropol is not a party to this litigation.

On June 11, 2019, the Plaintiffs filed their combined opposition to three of the Defendants' motions in limine. *Pls.' Combined Opp'n to Defs.' Mots. in Lim. to: Limit the Test. of Pls.' Expert [DKT. 146]; Exclude Pls.' Written Disc. Answers [DKT. 147]; and as to Daily Inspection Reports Identified by Pls. [DKT. 148]* (ECF No. 157).

On July 31, 2019, the Court entered judgment staying the case, "pending the mediation proceedings." *J. Staying Case* (ECF No. 165). Following unsuccessful settlement conferences, on October 22, 2020, the Plaintiffs filed a motion to set aside the indefinite stay, citing a lack of "administrative proceedings pending and, thus, no legal reason for the Court to stay further action in this case." *Mot. to Set Aside Indef. Stay* (ECF No. 188). On November 23, 2020, the Court granted the Plaintiffs' motion to set aside the indefinite stay. *Order* (ECF No. 196). On April 15, 2021, the Court ordered the parties to "file a joint proposed pretrial order on or before May 17, 2021. All motions in limine, including any Daubert challenges, shall also be filed by said date as well. A trial date will be set accordingly once COVID-19 circumstances so allow." *Order* (ECF No. 203). On July 9, 2021, the Court entered an order deeming the case "trial-ready" and reassigning the case to Judge John A. Woodcock, Jr., of the United States District Court for the District of Maine. *Order Reassigning Case* (ECF No. 205).

## II.   DISCUSSION OF PLAINTIFFS' MOTIONS IN LIMINE

### A.   Motion to Limit or Exclude Dr. Carlos Grovas' Expert Testimony (ECF No. 93)

In their first motion in limine, the Plaintiffs petition the Court to "(1) limit the opinion testimony of [Dr. Grovas] to the physical impairment findings from his

examination of [Ms. Laureano-Monge], (2) exclude references to any pre-existing medical conditions and/or propensity to fall, and (3) exclude the 'supplementary' report." *Pls.' Mot. to Limit Test. of Dr. Grovas* at 2, 19-20; *id.*, Attach. 1, *First Expert Report* (*First Grovas Report*); *id.*, Attach. 2., *Suppl. Expert Report* (*Suppl. Grovas Report*). Plaintiffs argue that use of Dr. Grovas' testimony at trial contravenes *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Federal Rule of Evidence 702's standard for expert witness testimony, and Federal Rule of Evidence 403's test for balancing the probative versus prejudicial value of evidence. *Id.* at 2, 8-15, 17-19. Moreover, the Plaintiffs argue that Dr. Grovas' supplementary report is inadmissible under Federal Rule of Civil Procedure 26(e)(1)(A), (2) because "it is based on the exact same information Dr. Grovas had available for his first report; while the second report does not complete or correct the first." *Id.* at 2, 15-17.

### 1.   Dr. Grovas' Opinion Testimony and References to Ms. Laureano-Monge's Pre-existing Medical Conditions

#### a.   The Plaintiffs' Position

The Plaintiffs argue that Dr. Grovas' expert opinion is neither reliable nor relevant because "there is no methodology that connects Dr. Grovas' opinion testimony about a propensity to fall and [Ms. Laureano-Monge's] conditions to the accident in this case." *Id.* at 6-8. In support, the Plaintiffs quote *General Electric Company v. Joiner*, 522 U.S. 136 (1997):

> [C]onclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is

7

simply too great an analytical gap between the data and the opinion proffered.

*Id.* at 6-7 (quoting *Joiner* 522 U.S. at 146). The Plaintiffs consequently posit that "the inclusion of subjects in his opinion do not fit the facts of this case and makes them inherently unreliable." *Id.* at 7.

The Plaintiffs argue that Dr. Grovas' testimony regarding how Ms. Laureano-Monge's past medical conditions may have caused sufficient weakness in her extremities so as to create a propensity to fall "is not supported by any reference to science" or to his examination of Ms. Laureano-Monge. *Id.* at 10. As a result, the Plaintiffs claim this expert opinion must be excluded because "[i]t is opinion evidence that is connected to Plaintiffs only by the *ipse dixit* of the expert" and that "there is simply too great an analytical gap between the facts and Dr. Grovas' opinion for it to be reliable or useful." *Id.* The Plaintiffs state that, in the absence of any evidence that Ms. Laureano-Monge ever fell or had any walking impediments, "there is no medical reason to include those or any other unrelated medical conditions in the expert's opinion testimony." *Id.* Plaintiffs assert that "inclusion of the unrelated conditions goes way beyond [Dr. Grovas'] physical evaluation of plaintiff's physical impairment." *Id.* at 12.

### b.   The Defendants' Position

The Defendants respond that the "Plaintiffs have not attacked expert Dr. Grovas' experience nor expertise with regards to medical issues, medical opinion regarding propensity to falls nor the fact that she was more prone to experience falls." *Defs.' Opp'n to Pls.' Grovas Mot.* at 5. "Further, Plaintiffs have not even requested to

take Dr. Grovas' deposition in order to determine whether he has the expertise, actual scientific knowledge per the FRE." *Id.* The Defendants insist that Dr. Grovas' testimony "regarding the medical conditions [Ms. Laureano-Monge] had before the incident and his opinion on how her conditions foster falls and make[] the individual more prone to experience falls" goes to the critical jury issue of Ms. Laureano-Monge's credibility. *Id.* at 3.

### c.   Legal Standard

Federal Rule of Evidence 702 governs the admission of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. "To give an expert opinion, a witness must be 'qualified' by 'knowledge, skill, experience, training, or education' to do so, and the judge must vet the opinion to ensure it's 'reliable.'" *United States v. Montijo-Maysonet*, 974 F.3d 34, 47 (1st Cir. 2020). More specifically, in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court designated trial judges as gatekeepers responsible for determining whether Rule 702's requirements are met in any given case. *Id.* at 597. A judge exercising the gatekeeper role must "ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597).

The Court possesses broad discretion to determine whether proffered expert testimony meets *Daubert*'s requirements for admissibility.  *Id.*; *see Carballo Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 81, 83 (D.P.R. 2001) ("When assessing the reliability of technical or specialized expert testimony, as opposed to scientific testimony, the trial judge exercises 'broad latitude' both in how it determines the reliability of the testimony, and in the ultimate reliability determination") (citing *Kumho Tire Co.*, 526 U.S. at 149).  The proponent of the expert testimony, in this case the Defendants, must establish admissibility by a preponderance of the evidence.  *Bourjaily v. United States*, 483 U.S. 171, 176 (1987); *see* FED. R. EVID. 702 advisory committee's note to 2000 amendment ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a).  Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence").

 "However, the 'reliability' bar cannot be met 'by an expert's self-serving assertion that his conclusions were derived by the scientific method'; rather, 'the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology.'" *Lawes v. CSA Architects & Eng'rs LLP*, 963 F.3d 72, 98 (1st Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1316 (9th Cir. 1995) ("*Daubert* on remand")).  Moreover, "to be 'helpful' to the jury, the expert's conclusions must have a 'valid scientific connection to the pertinent inquiry[.]'" *Id.* (quoting *Daubert*, 43 F.3d at 1320).  "This means that the conclusion must not only be relevant

to the facts at issue, but also that each step in the expert's process, including the link between the universe of pertinent facts and his conclusions, must be reliable." *Id.* "Although the Court must focus 'on principles and methodology, not on the conclusions they generate,'" *id.* (quoting *Daubert*, 509 U.S. at 595), "this focus 'need not completely [preclude] judicial consideration of an expert's conclusions.'" *Id.* (quoting *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)).

"In *General Electric Company v. Joiner*, 522 U.S. 136 (1999), the Supreme Court acknowledged that 'conclusions and methodology are not entirely distinct from one another. Trained experts commonly extrapolate from existing data. But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.'" *Id.* (quoting *Gen. Elec. Co.,* 522 U.S. at 146). "For this reason, '[a] court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (quoting *Gen. Elec. Co.,* 522 U.S. at 146). "This requirement, which is sometimes described as 'fit,' ensures that the connection between the expert's data, his conclusions, and the facts of the case is reliable." *Id.* at 99 (citing *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 32 (1st Cir. 2012)).

### d.   Analysis

After careful review of the first expert report and the applicable law, the Court concludes that Dr. Grovas' opinions—regarding whether Ms. Laureano-Monge's

medical conditions[4] were a factor in the cause of her fall—are sufficiently relevant and reliable to present to a jury in accordance with Federal Rule of Evidence 702.

Dr. Grovas is a witness qualified as an expert by knowledge, skill, experience, training, and education because he is an orthopedic surgeon as well as a Fellow with the International Academy of Independent Medical Evaluators, a certified member of the American Board of Independent Medical Examiners, and a "Medico Legal Evaluator." *First Grovas Report* at 15; *Proposed Pretrial Order* at 34; *see* FED. R. EVID. 702. Dr. Grovas' scientific, technical, and specialized knowledge will help the jury understand the evidence and determine a key fact at issue—whether Ms. Laureano-Monge's pre-existing medical conditions contributed to the cause of her fall. *See* FED. R. EVID. 702(a); *see also Gaydar*, 345 F.3d at 24 (a judge must decide "whether the scientific, technical, or other specialized knowledge [the expert] offers will assist the trier better to understand a fact in issue").

Federal Rule of Evidence 702(b) requires that expert testimony be based on "sufficient facts or data." Even though the "expert's methodology is the 'central focus of a *Daubert* inquiry,' courts 'may evaluate the data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable.'" *Lawes*, 963 F.3d at 99 (quoting *Ruiz-Troche*, 161 F.3d at 81). "However, district courts must not 'unduly scrutinize[] the quality of the

---

[4]     The Defendants assert that the "Plaintiffs do not refute nor deny that [Ms. Laureano-Monge] had (1) myasthenia gravis for seven years, (2) rheumatoid arthritis, (3) osteoporosis, (4) macular degeneration, (5) peripheral neuropathy or other conditions prior to the underlying incident." *Defs.' Opp'n to Pls.' Grovas Mot.* ¶ 2.

expert's data,' because such scrutiny 'usurps the role of the jury.'" *Lawes*, 963 F.3d at 99 (quoting *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 805 (7th Cir. 2013)).

Dr. Grovas' expert testimony and the conclusions in his initial expert report are based on sufficient facts and data and have a valid scientific connection to the pertinent inquiry because they are based on a review of comprehensive medical records from before, during, and after Ms. Laureano-Monge's fall, *First Grovas Report* at 2-8, as well as on an "Orthopaedic Physical Examination" of Ms. Laureano-Monge. *Id.* at 8-14; *see* FED. R. EVID. 702(b). The expert testimony is the product of reliable principles and methods such as those employed in independent medical examinations. *First Grovas Report* at 14; *see* FED. R. EVID. 702(c). "Importantly, '*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct'; rather, to satisfy *Daubert*'s objective, the proponent must show 'that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.'" *Lawes*, 963 F.3d at 99 (quoting *Milward*, 639 F.3d at 15). "Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (quoting *Daubert*, 509 U.S. at 596).

Dr. Grovas reliably applied the principles and methods of independent medical examiners to the facts of the case because, as Dr. Grovas explained, his "Independent Medical Examination was based upon the subjective complaints, history given by the claimant, the objective medical records and tests provided to me and the physical

findings of the claimant.  The opinions are based upon reasonable medical probability." *First Grovas Report* at 14; *see* FED. R. EVID. 702(d). "So long as an expert's scientific testimony rests upon 'good grounds, based on what is known,'" the First Circuit emphasized in *Milward v. Acuity Specialty Prods. Grp., Inc.*,, 639 F.3d 11, 15 (1st Cir. 2011) (quoting *Daubert*, 509 U.S. at 590), "it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities." *Id.* (citing Daubert, 509 U.S. at 596).

Dr. Grovas' opinion regarding how these medical conditions created a tendency for Ms. Laureano-Monge to fall was reached in a scientifically sound and methodologically reliable fashion.  Dr. Grovas shall be allowed to testify as to his conclusion that Ms. Laureano-Monge's medical conditions could have contributed to her fall.  Dr. Grovas' opinions were not reached by his ipse dixit alone, but rather by thorough evaluation of objective medical records and his own physical examination of Ms. Laureano-Monge.  Accordingly, the Court **DENIES** the Plaintiffs' Motion in Limine to Limit the Opinion Testimony of Defendants' Orthopedic Expert Dr. Carlos Grovas Badrena to the Findings of his Physical Examination of Plaintiff Carmen Laureano Monge (ECF No. 93).

### 2.  Supplementary Report

As to Dr. Grovas' supplementary report, the Plaintiffs argue the report is inadmissible under Federal Rule of Civil Procedure 26(e)(1)(A), (2), because "it is based on the exact same information Dr. Grovas had available for his first report; while the second report does not complete or correct the first." *Pls.' Mot. to Limit*

14

*Test. of Dr. Grovas* at 2, 15-17.  The Plaintiffs rely on Federal Rule of Civil Procedure

26:

> (1) In General.  A party who has made a disclosure under Rule 26(a)—
> or who has responded to an interrogatory, request for production, or
> request for admission—must supplement or correct its disclosure or
> response: (A) in a timely manner if the party learns that in some
> material respect the disclosure or response is incomplete or incorrect,
> and if the additional or corrective information has not otherwise been
> made known to the other parties during the discovery process or in
> writing[.]
>
> (2) Expert Witness.  For an expert whose report must be disclosed under
> Rule 26(a)(2)(B), the party's duty to supplement extends both to
> information included in the report and to information given during
> the expert's deposition.  Any additions or changes to this information
> must be disclosed by the time the party's pretrial disclosures under
> Rule 26(a)(3) are due.

FED. R. CIV. P. 26(e)(1)(A), (2).  The Plaintiffs reason that, since the Defendants are

allowed to supplement an expert report "only on a showing that the first report is

either 'incomplete or incorrect'" and the "Defendants make no such showing," then

the supplemental report and its content should be excluded.  *Pls.' Mot. to Limit Test.*

*of Dr. Grovas* at 17; *see* FED. R. CIV. P. 26 (e)(1)(A).

The Defendants rebut the Plaintiffs' argument by claiming that Dr. Grovas

rendered his supplementary expert report after obtaining new information from Ms.

Laureano-Monge's deposition transcript in which she revealed prior falls and denied

muscle fatigue.  *Defs.' Opp'n to Pls.' Grovas Mot.* ¶¶ 2, 5.  The Defendants claim that

"[i]t was only though deposition testimony, under oath, that [Ms. Laureano-Monge]

identified the extent of her conditions of myasthenia gravis (since 2007) and

rheumatoid arthritis.  This allowed [Dr. Grovas] to reach additional findings to

support Defendants' affirmative defenses regarding physical conditions and impairments that made [Ms. Laureano-Monge] more prone to falling." *Id.* ¶ 6. In addition, "the supplemental opinion is also supported by medical records, such as an electroneuromyographic examination . . . demonstrating feet numbness and weakness." *Defs.' Opp'n to Pls.' Grovas Mot.* ¶¶ 2, 5; *Id.*, Attach. 1, *Electroneuromyographic Exam.* Thus, the Defendants advance that Dr. Grovas' supplementary report will provide testimony regarding two affirmative defenses raised in their answer to the complaint: (1) that Ms. Laureano-Monge's "custodians and/or family members were negligent by failing to provide adequate care by allowing her to walk on her own . . . without assistance due to her physical conditions and/or impairments;" and that (2) "the damages allegedly suffered by Plaintiffs are due, either in full or in part, to her pre-existing medical conditions." *Id.* ¶ 10.

In reply, the Plaintiffs call the Defendants' argument "bogus" because the "supplementary report makes absolutely no reference to the transcripts that supposedly caused Dr. Grovas to want to make a second report." *Pls.' Reply to Defs.' Opp'n* ¶¶ 8-11.

From the Court's review of Dr. Grovas' reports of August 6, 2018 and October 13, 2018, it seems apparent that Dr. Grovas' initial report was directed to whether Ms. Laureano-Monge's February 4, 2014 fall caused the diagnosed conditions, when she recovered from the fall, and whether she suffered any permanent impairment from the fall. *First Grovas Report* at 1-15. By contrast, Dr. Grovas' supplemental report addressed whether any of Ms. Laureano-Monge's preexisting conditions

contributed to her February 4, 2014 fall. *Suppl. Grovas Report* at 1-8. In the supplemental report, Dr. Grovas concluded that Ms. Laureano-Monge's myasthenia gravis, rheumatoid arthritis, and osteoporosis are medical conditions that would have made Ms. Laureano-Monge more prone to falls. *Id.* at 5-7. Contrary to the Plaintiffs' assertion, Dr. Grovas' October 13, 2018 supplemental report does list the fact that he had reviewed transcripts of the Plaintiffs' August 7, 2018 depositions. *Id.* at 3.

The timing of this supplemental report does not favor exclusion, since the Magistrate Judge expressly extended the discovery deadline to allow for the supplemental report. On July 2, 2018, Magistrate Judge Marcos E. López set the deadlines for expert witness disclosures and fixed October 12, 2018 as the deadline by which the Defendants would "announce all expert witnesses, produce expert reports and expert witness disclosures." *Mins. of Proceedings* at 2 (ECF No. 53). On October 12, 2018, FFC filed a request for extension of time to produce a supplemental expert report, explaining that Dr. Grovas had finalized his review of both Plaintiffs' deposition transcripts and informed FFC that "he will be providing a **supplemental report** in this matter." *Req. for Extension of Time to Produce Suppl. Expert Report* at 1 (ECF No. 67) (emphasis in original). FFC requested that the deadline for expert disclosure be extended until October 26, 2018 to produce a supplemental report. *Id.* at 2. The Plaintiffs objected to the motion on the same grounds they now raise to object to the admission of Dr. Grovas' supplemental report, namely that Federal Rule of Civil Procedure 26(e)(1)(A)(2) does not allow a party to supplement a report in these circumstances. *Opp'n to Suppl. of Expert Report and to Limit Dr. Carlos Grovas'*

*Expert Opinion to Those Set Forth in his Report of Aug. 6, 2018* (ECF No. 69).  On October 15, 2018, Magistrate Judge López overruled Plaintiffs' objection and allowed FFC to supplement Dr. Grovas' report by October 16, 2018.  *Order* (ECF No. 70).

There is a certain tension between the mandatory disclosure provisions of Federal Rule of Civil Procedure 26(a)(2) and the obligation to supplement a previously disclosed expert report under Federal Rule of Civil Procedure 26(e)(1)(A), (2).  "A supplemental expert report that states additional opinions or rationales or seeks to 'strengthen' or 'deepen' opinions expressed in the original expert report exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1)."  *Cohlmia v. Ardent Health Servs., LLC*, 254 F.R.D. 426, 433 (N.D. Okla. 2008).  At the same time, courts have acknowledged that discovery is an "iterative process."  *Faure v. Las Cruces Med. Ctr., LLC*, No. 14-cv-559 KG/KBM, 2017 U.S. Dist. LEXIS 150359, at *7 (D.N.M. Sept. 15, 2017).  Furthermore, the courts that have excluded supplementary expert reports have typically done so where the supplemental report was not disclosed "within the deadline."  *Estate of Cape v. United States*, No. 11-C-0357, 2013 U.S. Dist. LEXIS 121844, at *15 (E.D. Wisc. Aug. 27, 2013).  The concern is heightened where the opponent has been "sandbagged" by relying on the contents of the first expert disclosure only to learn later of new opinions that should have been disclosed at the outset.  *United States ex rel. Tetsuwari*, 1:06-cv-00235, 2009 U.S. Dist. LEXIS 146930, at *5-6 (S.D. Ohio Nov. 18, 2009).

To exclude an expert's supplemental report, especially one disclosed during the discovery period, would be a "heavy-handed measure."  *King v. Reed, LLC*, Civ. No.

07-1908 (DWF/RLE), 2008 U.S. Dist. LEXIS 112331, at *11 (D. Minn. Oct. 6, 2008).

Before doing so, courts will examine the record to determine whether timing of the

supplemental report prejudiced the opponent, *Kouzmanoff v. Unum Life Ins. Co. of

Am.*, Nos. 17-cv-00721-RM-STV, 17-cv-00976-RM-STV, 2018 U.S. Dist. LEXIS

183264, at *17 (D. Colo. Oct. 25, 2018); *see King*, 2008 U.S. Dist. LEXIS 112331, at

*11 (noting that the opponent had "ample time" before trial to probe the contents of

the expert's supplemental report).

Here, as the Magistrate Judge expressly allowed FFC to supplement Dr.

Grovas' earlier expert report, FFC supplied the supplemental report during the time

the Magistrate Judge allowed, Dr. Grovas indicated that, unlike in developing his

first report, he had reviewed the Plaintiffs' depositions in preparing his supplemental

report, there is no evidence of bad faith or sandbagging on the part of FFC, and the

Plaintiffs have demonstrated no prejudice from the supplemental report, the Court

declines to apply the strong medicine of exclusion.  If the Plaintiffs wish to press a

sanction short of exclusion, they may do so by filing a motion within two weeks of the

date of this Order.

The Court **DENIES** the Plaintiffs' Motion to Exclude the Supplementary

Report of Dr. Grovas (ECF No. 93).

### 3.   Probative Versus Prejudicial Value

Finally, the Plaintiffs argue that Dr. Grovas' expert opinion goes "way beyond

the findings of the physical examination he made of [Ms. Laureano-Monge] to include

unfounded speculation about her pre-existing conditions and an unsupported

connection to a fall propensity" and that "[a]ny opinion beyond his physical evaluation

should be excluded under FED. R. EVID. 403 because its probative value is substantially outweighed by the danger of unfair prejudice." *Pls.' Mot. to Limit Test. of Dr. Grovas* at 18-19. Plaintiffs quote *United States v. Montas*, 41 F.3d 775 (1st Cir. 1994), which states: "[e]ven if admissible under Rule 702, expert testimony still may be excluded under FED. R. EVID. 403 if its probative value is substantially outweighed by the risk of unfair prejudice it creates." *Id.* at 18 (quoting *Montas*, 41 F.3d at 783).

"In conducting a Rule 403 analysis for being unfairly prejudicial, the court only seeks to avoid unfair prejudice, because all evidence is designed to be prejudicial in some capacity." *Pérez-Garcia v. P.R. Ports Auth.*, 871 F. Supp. 2d 62, 64 (D.P.R. 2012) (citing *United States v. Varoudakis*, 233 F.3d 113, 122 (1st Cir. 2000)). "The exclusion of evidence is not the general rule; to the contrary, the trial court's discretion to exclude relevant evidence under Rule 403 should be exercised with recognition that exclusion is extraordinary and to be invoked sparingly." *Rivera-Marrero v. Presbyterian Cmty. Hosp.*, 255 F. Supp. 3d 290, 293 (D.P.R. 2017).

In the present case, the Court finds that the probative value of the testimony from the Defendants' only expert witness—Dr. Grovas—as to the element of causation outweighs any potential prejudice envisioned by the rules. *See* FED. R. EVID. 403; *see also Lawes*, 963 F.3d 72 at 92, 109 n. 50 (finding "under Rule 403's less exacting relevance standard" that the probative value of an expert's testimony and "the proponents need" for the testimony, despite flaws in the expert's disclosures and compliance with discovery obligations, outweighed potential prejudice). Dr. Grovas' testimony may assist the jury in evaluating the Defendants' affirmative defenses,

raised in their answers to the complaint, and his assessment of Ms. Laureano-Monge's pre-existing conditions as they specifically relate to the fall at issue in this case is not unduly prejudicial.  Therefore, the Plaintiffs' concerns about Dr. Grovas' opinions misleading the jury are outweighed by the relevance of his testimony to crucial legal issues and are mitigated by Plaintiffs' ability to engage in "vigorous cross-examination, [the] present[ation of] contrary evidence, and . . . careful instructions on the burden of proof."  *Daubert*, 509 U.S. at 596; FED. R. EVID. 403. The Court **DENIES** Plaintiffs' Motion in Limine to Exclude Dr. Grovas' Expert Testimony (ECF No. 93).

### 4.    Conclusion

The Court **DENIES** Plaintiffs' Motion in Limine to Limit the Opinion Testimony of Defendants' Orthopedic Expert Dr. Carlos Grovas Badrena to the Findings of his Physical Examination of Plaintiff Carmen Laureano Monge and to Strike his "Supplementary" Report (ECF No. 93).

### B.    Motion to Exclude Dr. Aura Delgado's Testimony and Medical Records (ECF No. 138)

The Plaintiff's second motion in limine requests that the Court: (1) bar "defendant [FFC] . . .  from introducing the two medical records of [Ms. Laureano-Monge] from the Puerto Rico Medical Center" and (2) exclude the testimony of Dr. Aura F. Delgado, Ms. Laureano-Monge's emergency room physician, under Federal Rules of Civil Procedure 26(e) and 37(c) as well as under Federal Rules of Evidence 803(4), 401, and 403.  *Pls.' Mot. to Exclude Medical Rs.* at 17; *id.*, Attach. 2, *Discharge Summary*; *id.*, Attach. 3, *Pls.' Initial Disclosures*.

21

In the parties' joint proposed pretrial order, FFC states it may call Dr. Delgado as a potential witness to testify "as to the content of the medical records that reflect specific conversations with [Ms. Laureano-Monge] at Puerto Rico Medical Center regarding how the alleged accident occurred, and to authenticate evidence." *Proposed Pretrial Order* at 33. Moreover, FFC also states in the proposed pretrial order that it might use the two medical records as evidence—(1) Dr. Delgado's handwritten medical notes prepared while providing Ms. Laureano-Monge with treatment for injuries sustained from her fall and (2) the discharge summary from the Puerto Rico Medical Center—detailing Ms. Loreano-Monge's medical history and stating that she fell from a motorized shopping cart. *Id.* at 37, ¶ 12-13; *Pls.' Mot. to Exclude Medical Rs.*, Attach. 1, *Present Condition*; *id.*, Attach. 2, *Discharge Summary*.

The Plaintiffs argue that the Defendants did not comply with Federal Rule of Civil Procedure 26(e)(1)(a) because they failed to disclose that the Puerto Rico Medical Center emergency room physician, Dr. Delgado, was an individual likely to have discoverable information and that FFC might use Dr. Delgado's testimony and the medical records to support its defense. *Pls.' Mot. to Exclude Medical Rs.* at 4-5. Thus, the Plaintiffs claim that "[p]ursuant to FED. R. CIV. P. 37(c), none of this may be used at trial." *Id.* (citing *Ortiz-López v. Sociedad Española de Auxilio Mutuo y Beneficiencia de P.R.*, 248 F.3d 29, 33 (1st Cir. 2001) ("What the district court must find under Rule 37(c) is that the offending parties were not 'substantially justified' in failing to disclose information required by Rule 26(a) or Rule 26(e) and that the failure to disclose was not harmless")). The Plaintiffs claim that at no time before the March

7, 2019 proposed pretrial order did Defendants "give Dr. Delgado's address, telephone number[,] or the subject of the information she possessed—all of which are mandated by FED. R. CIV. P. 26(a) and (e)." *Pls.' Mot. to Exclude Medical Rs.* at 6. Moreover, "[t]he violation is all the more egregious because the disclosure was made after discovery closed" on October 31, 2018. *Mins. of Proceedings* at 2 (ECF Nos. 53); *Pls.' Mot. to Exclude Medical Rs.* at 7.

Defendants failed to respond to the Plaintiffs' motion to exclude Dr. Delgado's testimony and the Puerto Rico Medical Center records and the Court does not know, therefore, Defendants' position.

Based only on the Plaintiffs' arguments, the Court must agree with the Plaintiffs. FFC has not shown that it provided Plaintiffs with Dr. Delgado's name, address, telephone number, and the subjects of Dr. Delgado's information during discovery in accordance with Federal Rule of Civil Procedure 26. *Mot. Submitting Exs. to Pls.' Omnibus Mot.*, Attach. 1, *Defs.' Initial Disclosures*. Moreover, the Defendants have not shown that they were substantially justified in failing to disclose this information or that the late disclosure was harmless. *See, e.g.*, *Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004) ("The purpose of the expert disclosure rules is to facilitate a fair contest with the basic issues and facts disclosed to the fullest practical extent. Thus Rules 26(a) and 37(c)(1) seek to prevent the unfair tactical advantage that can be gained by failing to unveil an expert in a timely fashion, and thereby potentially deprive a plaintiff of the opportunity to depose the proposed expert, challenge his credentials, solicit expert opinions of his own, or conduct expert-

related discovery") (citations and internal quotation marks omitted).   In fact, Defendants failed to oppose the instant motion in limine.  *See Goldenson v. Steffens*, 2012 U.S. Dist. LEXIS 74650, *16-17 (D. Me. May 30, 2012) (excluding expert testimony where the proponents had "not shown that [the expert's] proposed testimony is of such importance to their case as to warrant consideration of its inclusion despite their lack of a showing of substantial justification [for their late disclosure] or harmlessness").

Even if Dr. Delgado were considered a lay witness for purposes of FFC's discovery obligations, the Plaintiffs contend in their unobjected-to motion that "at no time did [FFC] ever disclose the emergency room physician Dr. Delgado as an individual likely to have discoverable information in support of the defendant FFC's defense or that the medical records do the same; nor did it give Dr. Delgado's address, telephone number (home or business) or the subject of the information she possessed." *Pls.' Mot. to Exclude Medical Rs.* at 6-7.  As Defendants failed to respond to the Plaintiffs' motion, the Court accepts this unrebutted assertion.

As a result, the Court **GRANTS** Plaintiffs' Motion in Limine to Exclude Medical Records and Dr. Aura F. Delgado (ECF No. 138) and forbids admission of Dr. Aura Delgado's testimony as well as her medical records.

### C.   Omnibus Motion to Exclude Defendants' Trial Witnesses and Documentary Exhibits (ECF No. 144)

The Plaintiffs' third motion in limine petitions the Court to exclude the testimony of Luis Álvarez, Jose Brenes, Alfredo Salazar, Ana Sebastian, Paolo Hereter, and the representatives of O.L. Maintenance & Services Corp. and Hard

Rock Construction. *Pls.' Omnibus Mot.* at 3-14.  In addition, this omnibus motion in limine objects to almost all the Defendants' documentary evidence advanced in the proposed pretrial order. *Id.* at 15-30.

### 1.    Motion to Exclude Luis Álvarez's Testimony

The Plaintiffs' first motion within their omnibus motion in limine requests that the Court exclude the proposed testimony of FFC's current Executive Director, Luis Álvarez ("Mr. Álvarez"). *Id.* at 4-10.  According to the proposed pretrial order, FFC lists Mr. Álvarez as a potential witness who:

> will testify as executive director of FFC[,] as to the documents at Plaza Guaynabo shopping center regarding the preventative maintenance and repairs in the area of the alleged incident, protocols and all matters as to the maintenance and repairs by the shopping center, services retained by the shopping center to perform maintenance and repairs, daily and annual inspections performed in the premises by the administration of the shopping center, directives by administration of the shopping center as to maintenance and repairs in the parking area in question, pavements works performed prior to the incident, according to FFC records; he will also authenticate evidence proffered by FFC that is not stipulated by the parties[.]

*Proposed Pretrial Order* at 31-32 (ECF No. 138).  The  Plaintiffs argue that FFC did not comply with the requirements for initial disclosures under Federal Rule of Civil Procedure 26(a)(1)(A) or for supplemental disclosures under Federal Rule of Civil Procedure 26 (e)(1)(A) because "[d]efendant FFC never disclosed that this proposed witness was an individual likely to have discoverable information that defendant FFC may use to support its defenses." *Pls.' Omnibus Mot.* at 4.  Thus, pursuant to Federal Rule of Civil Procedure 37(c) and *Ortiz-López*, 248 F.3d at 33, the Plaintiffs assert "this witness may not be used at trial." *Id.*

According to the Plaintiffs, "it was not until the proposed pretrial order[] that defendant FFC first announced Mr. Álvarez as a trial witness." *Id.* at 4. The Plaintiffs posit that record evidence already reflects that FFC violated Federal Rule of Civil Procedure 26 because Mr. Álvarez was first disclosed as an individual likely to have knowledge of the facts on January 16, 2019, *Pls.' Mot. for Sanctions for Fed. R. Civ. P. 37(b)(2) Sanctions for Defs.' Failure to Comply with Ct. Orders,* Attach. 1, *Def's Unsworn Decl.* (ECF No. 114), after discovery ended on October 31, 2018, when FFC delivered to the Plaintiffs an unsworn statement under penalty of perjury after being compelled by the Court. *Mins. of Proceedings for Initial Settlement and Scheduling Conference* (ECF No. 53); *Informative Mot. Regarding Compliance With the Orders in Dockets 103 and 105* (ECF No. 112); *Pls.' Omnibus Mot.* at 4-5; *see González-Rivera v. Centro Médico del Turabo, Inc.*, 931 F.3d 23, 29 (1st Cir. 2019) (District courts have "an interest in the efficient management of [their] docket[,]" and "[w]henever a party, without good cause, neglects to comply with reasonable deadlines, the court's ability to manage its docket is compromised").

FFC failed to respond to the Plaintiffs' motion in limine regarding Mr. Álvarez's testimony.

Based on the Plaintiffs' unanswered assertions, the Court once again agrees with the Plaintiffs. FFC's late disclosure of Mr. Álvarez as a person with knowledge of facts in support of FFC's defense violates the disclosure requirements of Federal Rule of Civil Procedure 26. Defendants did not inform the Plaintiffs that Mr. Álvarez was a person with knowledge of the facts during the regular course of discovery but

rather disclosed his identity when compelled by the Court after discovery concluded. In addition, the Defendants have not shown that they were substantially justified in failing to disclose this information or that the late disclosure was harmless.  Although the Court compelled FFC to supplement its disclosures to include the name of its proffered executive director, *Orders Granting in Part and Denying in Part 74 Mot. to Compel and 75 Mot. to Compel* (ECF Nos. 103 and 105), this disclosure occurred after discovery concluded.

The Court **GRANTS** Plaintiffs' first Omnibus Motion in Limine to Exclude Defendants' Trial Witness Luis Álvarez (ECF No. 144).

### 2.    Motion to Exclude Jose Brenes' Testimony

The Plaintiffs' second motion within their omnibus motion in limine, *Pls.' Omnibus Mot.* at 10-12, urges the Court to exclude the proposed testimony of FFC's current administrator of the Plaza Guaynabo shopping center, Jose Brenes who—according to the proposed pretrial order—will testify regarding:

> The administration of the shopping center, documentation obtained during discovery, the documents at Plaza Guaynabo shopping center regarding the preventative maintenance and repairs in the area of the alleged incident, protocols and all matters as to maintenance and repairs by the shopping center, services retained by the shopping center to perform maintenance and repairs, daily and annual inspections performed in the premises by the administration of the shopping center, directives by administration of the shopping center as to maintenance and repairs in the parking area in question, pavement works performed prior to the incident, according to FFC records; he will also authenticate evidence proffered by FFC that is not stipulated by the parties[.]

*Proposed Pretrial Order* at 32.  The Plaintiffs argue that "[l]ike Mr. Álvarez, Mr. Brenes ought to be stricken as a witness because he was not identified in the initial disclosures, and because he has no personal knowledge of the events" that took place

prior to his employment "and there are no records to establish the alleged inspections and protocols that preceded [Mr.] Brenes' employment." *Pls.' Omnibus Mot.* at 11.

The Court disagrees. The Defendants' disclosure of Mr. Brenes as a person with knowledge of the facts in support of FFC's defense does not contravene the disclosure requirements of Federal Rule of Civil Procedure 26. Although Mr. Brenes was not identified during initial disclosures, the Defendants identified him as an individual with discoverable information in their first answer to Plaintiffs' first set of interrogatories and its two subsequent amendments. *Mot. Submitting Exs. to Pls.' Omnibus Mot.*, Attach. 2, *Answers to First Set of Interrogs.*; *id.*, Attach. 3, *Suppl. Answers to First Set of Interrogs.*; *id.*, Attach. 4, *Second Suppl. and Am. Answers to First Set of Interrogs.* Moreover, the Defendants' interrogatories show that Mr. Brenes has sufficient personal knowledge of conditions related to the accident because, although FFC hired him after the accident occurred, he could reliably produce and explain business records of FFC's decisions regarding the maintenance and repair of the parking lot from 2010 to 2015. *Id.*, Attach. 2, *Answers to First Set of Interrogs.*; *id.*, Attach. 3, *Suppl. Answers to First Set of Interrogs.*; *id.*, Attach. 4, *Second Suppl. and Am. Answers to First Set of Interrogs.*

Consequently, the Court **DENIES** Plaintiffs' Second Omnibus Motion in Limine to Exclude Defendants' Trial Witness Jose Brenes (ECF No. 144).[5]

---

[5] The Court observes that Mr. Brenes may testify as to the same facts that Mr. Álvarez would have testified to regarding the operation of the parking lot. *See id.*, Attach. 4, *Second Suppl. and Am. Answers to First Set of Interrogs.*, at 12-13; *id.*, Attach. 5, *Statement Under Penalty of Perjury.*

### 3.    Motion to Exclude Alfredo Salazar's and Ana Sebastian's Testimony

The Plaintiffs' third motion in their omnibus motion in limine petitions the Court to exclude the proposed testimony of Alfredo Salazar and Ana Sebastian, "individuals who conducted annual inspections to detect dangerous conditions" for FFC. *Pls.' Omnibus Mot.* at 12-13. The proposed pretrial order states that the Defendants may call Mr. Salazar and Ms. Sebastian as potential witnesses to testify "as to inspections of the property in question [he/she] had performed[.]" *Proposed Pretrial Order* at 33. The Plaintiffs argue that Mr. Salazar and Ms. Sebastian are surprise witnesses who were not identified in FFC's initial disclosures and that nowhere "did defendant disclose that the information that [Mr. Salazar and Ms. Sebastian] had supported its defense." *Pls. Omnibus Mot.* at 12.

The Plaintiffs further claim that the Defendants failed to provide witness addresses, in violation of Federal Rule of Civil Procedure 26, until FFC's second supplemental and amended answers to the Plaintiffs' interrogatories, which occurred after the conclusion of discovery on October 31, 2018. *Pls.' Omnibus Mot.* at 12-13.

The Court disagrees. Mr. Salazar and Ms. Sebastian were first mentioned as individuals who conducted FFC's annual inspections in the Defendants' first answer to the Plaintiffs' interrogatories. *Pls. Omnibus Mot.* at 12; *Mot. Submitting Exs. to Pls. Omnibus Mot.*, Attach. 2, *Answers to First Set of Interrogs.*, at 2. Thus, FFC properly disclosed Mr. Salazar and Ms. Sebastian as individuals with discoverable information because they were referenced in the Defendants' first answer to interrogatories as individuals with knowledge of the facts, based off the inspection

reports they carried out as "FH employees."[6]  *Mot. Submitting Exs. to Pls. Omnibus Mot.*, Attach. 2, *Answers to First Set of Interrogs.*, at 2.

Moreover, FFC's first supplemental and amended answers to the Plaintiffs' interrogatories corrected and completed the addresses of Mr. Salazar and Ms. Sebastian before the conclusion of discovery on October 10, 2018.  *Id.*, Attach. 3, *Suppl. Answers to First Set of Interrogs.*, at 6, 13.

The Court **DENIES** the Plaintiffs' Third Omnibus Motion in Limine to Exclude Defendants' Trial Witnesses Alfredo Salazar and Ana Santisteban (ECF No. 144).

### 4.    Motion to Exclude Paolo Hereter's Testimony

The Plaintiffs' fourth motion within their omnibus motion in limine seeks to exclude the proposed testimony of Paolo Hereter, former administrator of Plaza Guaynabo during the time of Ms. Laureano-Monge's fall.  *Mot. Submitting Exs. to Pls.' Omnibus Mot.*, Attach. 1, *Defs.' Initial Disclosures*, at 2.  The proposed pretrial order indicates that Mr. Hereter will testify "as to the inspections of the property in question, his knowledge as to the incident in question and the administration of the shopping center at the time of the alleged incident, as well as pavement works performed prior to the incident[.]"  *Proposed Pretrial Order* at 33.  The Plaintiffs argue that although "Mr. Hereter was identified in the initial disclosures, only a postal address was provided for him and it was not disclosed that he had knowledge of the pavement work performed before the accident."  *Pls.' Omnibus Mot.* at 13-14.   The

---

[6]      "FH" stands for "Fideicomiso Hispamer, S.E.", which operates Plaza Guaynabo.  *Mot. Submitting Exs. to Pls. Omnibus Mot.*, Attach. 4, *Second Suppl. and Am. Answers to First Set of Interrogs.*, at 1.

Plaintiffs claim that neither FFC's original answers to the Plaintiffs' interrogatories, *Mot. Submitting Exs. to Pls.' Omnibus Mot.*, Attach. 2, *Answers to First Set of Interrogs.*, at 2, nor its first supplemental and amended answers, *id.,* Attach. 3, *Suppl. Answers to First Set of Interrogs.*, at 6, provides a physical address for Mr. Hereter. *Pls. Omnibus Mot.* at 13-14.  The Plaintiffs state that despite their insistence, the Defendants did not provide Mr. Hereter's physical address until the second supplemental and amended answers to the first set of the Plaintiffs' interrogatories, *Mot. Submitting Exs. to Pls.' Omnibus Mot.,* Attach. 4, *Second Suppl. and Am. Answers to First Set of Interrogs.*, at 5, which were disclosed after discovery ended.[7]

The Court disagrees.  Mr. Hereter's postal address and the accompanying phone number mentioned in Defendants' initial disclosures provided sufficient contact information to satisfy Federal Rule of Civil Procedure 26.  *Id.*, Attach. 1, *Defs.' Initial Disclosures*, at 2.  The fact that the Defendants supplemented Mr. Hereter's contact information in their second supplemental and amended answers to the Plaintiffs' interrogatories with his physical address does not mean that the initial disclosure was tardy.  The contact information in the initial disclosures was already sufficient under Federal Rule of Civil Procedure 26.

The Court **DENIES** Plaintiffs' Fourth Omnibus Motion in Limine to Exclude Defendants' Trial Witness Paolo Hereter (ECF No. 144).

---

[7]     The Defendants' second supplemental and amended answers to the Plaintiffs' first set of interrogatories were disclosed on February 20, 2019, *Mot. Submitting Exs. to Pls.' Omnibus Mot. in Lim.*, Attach. 4., *Second Suppl. and Am. Answers to First Set of Interrogs.*, at 11.  Discovery concluded on October 31, 2018.  *Mins. for Initial Settlement and Scheduling Conference* (ECF No. 53).

**5.   Motion to Exclude Testimony From Representatives of O.L. Maintenance & Services Corp. and Hard Rock Construction.**

The Plaintiffs' fifth motion within their omnibus motion in limine seeks to exclude testimony from representatives of O.L. Maintenance & Services Corporation and Hard Rock Construction. *Pls.' Omnibus Mot.* at 14. The proposed pretrial order states that these representatives will testify "to authenticate evidence proffered by FFC and with regards to services provided[.]" *Proposed Pretrial Order* at 33. The Plaintiffs argue that these representatives "were not identified in defendant FFC's initial disclosures and for this reason alone they ought to be excluded. To avoid being repetitive, plaintiffs incorporate here the arguments regarding the objections to the documentary evidence having to do with these parties, *post*." *Pls.' Omnibus Mot.* at 14.

The Court disagrees. Although FFC did not identify O.L. Maintenance & Services Corporation and Hard Rock Construction during initial disclosures, it subsequently disclosed their identities under Federal Rule of Civil Procedure 26 in its answer to the Plaintiffs' first set of interrogatories. *Mot. Submitting Exs. to Pls.' Omnibus Mot.*, Attach. 2, *Answers to First Set of Interrogs.*, at 2. Moreover, in line with the Court's prior determination in this order of whether the invoices and contracts from before and after the accident should be excluded, the Court will not exclude Exhibits Twenty and Twenty-Two on the basis of late notice. The Defendants may present a company representative to testify as to the authenticity of the invoices and contracts in Exhibits Twenty and Twenty-Two.

Thus, the Court **DENIES** the Plaintiffs' Fifth Omnibus Motion in Limine to Exclude Defendants' Trial Witnesses Representative of O.L. Maintenance & Services Corporation and Representative of Hard Rock Construction (ECF No. 144).

### 6. Objections to Defendants' Documentary Evidence

The Plaintiffs' sixth (and final) motion within their omnibus motion in limine objects to almost all the Defendants' documentary evidence listed in the proposed pretrial order, *Proposed Pretrial Order* at 36-39; *Pls.' Omnibus Mot.* at 15.

### a. Dr. Grovas' Curriculum Vitae

The Plaintiffs first object to Dr. Grovas' curriculum vitae, the Defendants' Exhibit One, as hearsay under Federal Rules of Evidence 801(c) and 802, and under Federal Rule of Evidence 403 as "cumulative and a waste of time." *Pls.' Omnibus Mot.* at 15. The Plaintiffs argue that the curriculum vitae is hearsay because it "is a statement that Dr. Grovas[] did not make while testifying and which defendant FFC proposes as trial evidence to prove the truth of the matter asserted in exhibit 1." *Id.* at 16. The Plaintiffs cite *Jones v. American Council on Exercise*, Civil Action No. H-15-3270, 2016 U.S. Dist. LEXIS 143882, at *5 (S.D. Tex. Oct. 18, 2016), which reads "[w]hile the curriculum vitae is technically hearsay and thus likely will not be admitted as evidence at trial absent a stipulation between the parties, this does not prevent the Court from relying on the curriculum vitae to determine whether the expert is qualified[.]" *Id.*

The Court agrees. Technically, Dr. Grovas' curriculum vitae is hearsay and no exceptions apply to permit its admission. *Hosse v. Sumner Cty. Bd. of Educ.*, No. 3:13C520, 2018 U.S. Dist. LEXIS 44573, at *7 (M.D. Tenn. Mar. 19, 2018); *McBride*

*v. Kmart Corp.*, No. 14-CV-41-SWS, 2015 U.S. Dist. LEXIS 192201, at *7 (D. Wy. Jan. 13, 2015); *Sheffield v. State Farm Fire & Cas. Co.*, No. 5:14C38, 2016 U.S. Dist. LEXIS 81985, at *22-23 (S.D. Ga. June 23, 2016); *Mahnke v. Wash. Metro. Area Transit Auth.*, 821 F. Supp. 2d 125, 154 (D.D.C. 2011); *Sutfin v. City of Bono, Ark.*, No. 3:07C124, 2009 U.S. Dist. LEXIS 62327 (E.D. Ark. July 6, 2009); *Alexie v. United States*, No. 3:05C297, 2009 U.S. Dist. LEXIS 4103, at *1 (D. Ala. Jan. 21, 2009); *State v. Cobb*, No. E2017-01746-CCA-R3-CD, 2018 Tenn. Crim. App. LEXIS 502, at *26-28 (Ct. Crim. Apps. Tenn. July 6, 2018).

Even so, in practical litigation, the parties routinely stipulate to the admissibility of curriculum vitae for reasons of common sense. *Cobb*, 2018 Tenn. Crim. App. 502, at *27 ("Parties are not prevented from stipulating to the admission of a written CV document"); *McBride*, 2015 U.S. Dist. LEXIS 192201, at *7 ("[C]urricula vitae are routinely admitted into evidence"). Typically, more than one party will call witnesses (often experts) and will seek to admit their resumes, and if the curriculum vitae of the opponent's witness is excluded on the basis of hearsay, the same exclusion will apply to the party's own witness's curriculum vitae.

But more to the point, the same evidence is admissible through the direct testimony of the witness. *Hosse*, 2018 U.S. Dist. LEXIS 44573, at *7-8 ("Plaintiff can testify to all of the relevant experiences listed on his resume from personal knowledge"). Thus, the *Cobb* Court observed that the exclusion of a curriculum vitae "may be a case where one wins the battle but loses the war" because the objecting party "could not prevent the witness from testifying about all of the information

contained within the CV document." *Cobb*, 2018 Tenn. Crim. App. LEXIS 502, at *27. Moreover, if a witness could not recall all the specifics in a resume, the document may be used to refresh his recollection under Federal Rule of Evidence 612. *Hosse*, 2018 U.S. Dist. LEXIS 44573, at *8. The *Cobb* Court neatly summarized the situation by noting that "this is an example of choosing one's poison: stipulating to the admission of a written CV or insisting that the information be presented through testimony." 2018 Tenn. Crim. App. LEXIS 502, at *28.[8]

The Court will exclude Dr. Grovas' resume at trial if the Plaintiffs continue to object to its admission (and upon objection will exclude all other resumes from all other witnesses). At the same time, the Court will allow Dr. Grovas to testify to his professional background and, if he cannot recall all the details, to use the curriculum vitae to refresh his recollection. The Court **GRANTS** Plaintiffs' First Objection to Defendants' Documentary Evidence and forbids the admission of Dr. Grovas' curriculum vitae into the record (ECF No. 144).

### b. Dr. Grovas' Expert and Supplementary Reports

The Plaintiffs next object to both Dr. Grovas' initial expert report, *First Grovas Report*, Defendants' Exhibit Two, and his supplementary expert report, *id.*, Attach. 2, *Suppl. Expert Report*, Defendants' Exhibit Three, on the same hearsay grounds that they object to Dr. Grovas' curriculum vitae. *Pls.' Omnibus Mot.* at 17; *see* FED.

---

[8]      The Plaintiffs assert that Dr. Grovas' curriculum vitae is objectionable under Federal Rule of Evidence 403 because it is "cumulative and a waste of time." *Pls.' Omnibus Mot.* at 15-16. To the contrary, if the Court reached the Rule 403 issue, it would readily find that time would be wasted, not from the admission of a resume, but from a witness's oral recitation of it. Of course, if there were something inaccurate or prejudicial in the resume, Rule 403 would come into play, but the Plaintiffs have not made that claim. The Court does not reach Rule 403 because the curriculum vitae is inadmissible regardless of Rule 403.

R. EVID. 801(c), 802. Moreover, the Plaintiffs incorporate by reference the objections raised in their motion in limine regarding Dr. Grovas' expert reports. *Pls.' Omnibus Mot.* at 17; *see* FED. R. EVID. 403, 702; *Daubert*, 509 U.S. at 579.

Dr. Grovas' expert reports themselves are inadmissible hearsay for the same reason his curriculum vitae is inadmissible hearsay. *Jones ex rel. United States v. Mass. Gen. Hosp.*, 780 F.3d 479, 494 (1st Cir. 2015) (describing an expert report as "a quintessential example of hearsay"). As with his resume, however, Dr. Grovas will be allowed to testify to the contents of his expert report and to rely on the information in the report that medical doctors reasonably rely on in forming their medical opinions. *See* FED. R. EVID. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect"); *United States v. Morrison*, 531 F.2d 1089, 1094-95 (1st Cir. 1976).

The Court accordingly **GRANTS** the Plaintiffs' Second Objection to Defendants' Documentary Evidence Related to Dr. Grovas (ECF No. 144) insofar as the admission of Dr. Grovas' expert reports is concerned because the reports are inadmissible hearsay and the Court **DISMISSES** without prejudice the motion

insofar as the admission of reports or data underlying his opinion testimony is concerned because the Court has not been presented with the specific data or reports.

### c. Ms. Laureano-Monge's Medical Records From Before the Accident

Third, the Plaintiffs object to FFC's proposed admission of Ms. Laureano-Monge's medical records from before the accident. *Pls.' Omnibus Mot.* at 17-18. The Plaintiffs argue that these medical records are inadmissible because: (1) they are irrelevant under Federal Rule of Evidence 401, (2) their probative value is substantially outweighed by a danger of unfair prejudice under Federal Rule of Evidence 403, and (3) they lack foundation under Federal Rule of Evidence 901. *Id.* at 18-21.

"A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal rules. Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . .." *United States v. Abel*, 469 U.S. 45, 54 (1984). Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401. Thus, "[r]elevancy is a very low threshold." *United States v. Cruz-Ramos*, 987 F.3d 27, 42 (1st Cir. 2021). "'[T]he evidence need not definitively resolve a key issue in the case,' but rather 'need only move the inquiry forward to some degree.'" *Id.* (quoting *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010)). In the First Circuit's words, "it is no exaggeration to say that '[a] relevancy-

based argument is usually a tough sell.'" *Id.* (citing *Bielunas*, 621 F.3d at 76) (alterations in *Cruz-Ramos*).

Relevant evidence is generally admissible, while "[i]rrelevant evidence is not admissible." FED. R. EVID. 402.  However, under Federal Rule of Evidence 403, "[t]he Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

Plaintiffs argue that these medical records from before Ms. Laureano-Monge fell are irrelevant under Federal Rule of Evidence 401 because "they have no tendency to make more or less probable (than they would without it) any fact of consequence in determining this action." *Id.* at 19.  The Court disagrees.  These medical reports from before Ms. Laureano-Monge's accident are relevant under Federal Rule of Evidence 401 because they tend to make more or less probable whether her preexisting medical conditions contributed to her fall and they also illuminate whether her injuries after the fall were a continuation of her preexisting medical conditions, were new medical conditions, or were a combination of the two.

In addition, Plaintiffs argue that these records are inadmissible under Federal Rule of Evidence 403 because "[f]ocusing on an irrelevant medical history (Exhibits 4-11) improperly shifts the factfinder's attention from the core issue of defendant's negligent maintenance of its parking lot to a non-issue, *i.e.* medical records that are not related [to] plaintiff's accident." *Pls.' Omnibus Mot.* at 21.  As such, Plaintiffs

posit that "it will waste time and result in unfair prejudice and Jury confusion that 'substantially outweighs' the evidence's probative value (which is none)." *Id.* The Court disagrees. The probative value of medical records underpinning Defendants' expert's conclusion that Ms. Laureano-Monge's medical conditions could have contributed to the cause of her fall and also to her post-accident symptoms is not substantially outweighed by any unfair prejudice under Federal Rule of Evidence 403.

Lastly, the Plaintiffs claim that Ms. Laureano-Monge's medical records from before the accident are inadmissible because they lack the necessary foundation under Federal Rule of Evidence 901. The Plaintiffs state that "[t]he proposed pretrial order reveals no means of authenticating Exhibits 4-11, without which they may not be admitted at trial." *Pls.' Omnibus Mot.* at 21. This is simply incorrect. In the March 7, 2019 Proposed Pretrial Order, in addition to listing named witnesses, FFC listed:

> 12. <u>Custodians of Documents and Other Evidence</u>, custodians of documents and other evidence announced by Defendants which authentication is not stipulated by the parties.

*Proposed Pretrial Order* at 33-34. In the Court's experience, it is common for attorneys to list prospective authentication witnesses in a proposed pretrial order as a precaution. If the opposing party stipulates to the admissibility of the records, the proponent will not be required to locate, subpoena, and name the authenticating witnesses; yet, if the opposing party objects, the proponent will supplement the names of the authenticating witnesses. Here, the Court will give counsel an opportunity to

consult with each other and to inform the Court as to whether the Plaintiffs will stipulate to the authenticity of the medical records or will require FFC to present authenticating witnesses at trial. Within twenty-eight days of the date of this order, the parties must inform the Court whether a records stipulation will be forthcoming and, if not, FFC must inform the Court how much time it will need to amend the proposed pretrial order to list the names of the authenticating witnesses.

The Court **DENIES** Plaintiffs' Third Objection to Defendants' Documentary Evidence (ECF No. 144).

### d. Dr. Delgado's Medical Record and Discharge Summary

The Plaintiffs next object to the admission of Dr. Delgado's medical notes from when she provided treatment to Ms. Laureano-Monge the day after Ms. Laureano-Monge fell, Defendants' Exhibit Twelve, and her discharge summary from Puerto Rico Medical Center, Defendants' Exhibit Thirteen. *Proposed Pretrial Order* at 37; *Pl's Omnibus Mot.* at 22. The Plaintiffs' sole objection to this evidence incorporates by reference the arguments raised in their motion in limine to exclude Dr. Delgado's testimony and related medical records. *See Pls.' Mot. to Exclude Medical Rs.*

As the Court granted the Plaintiffs' motion to exclude Dr. Delgado's testimony and related medical records, the Court **DISMISSES** without prejudice the Plaintiffs' Fourth Objection to Defendants' Documentary Evidence as moot.[9]

---

[9]     If the parties wish to present Dr. Delgado's medical notes for a purpose other than Dr. Delgado's testimony, they may renew this motion.

### e. Invoices and Contracts from Before and After the Accident

The Plaintiffs object to invoices and contracts for the maintenance of the parking lot area, the Defendants' Exhibits Fourteen through Twenty-Five and Twenty-Eight, from before and after the accident. *Pls.' Omnibus Mot. in Lim.* at 22-28; *see Proposed Pretrial Order* at 37-38. The Plaintiffs argue that these invoices and contracts are inadmissible because they are irrelevant under Federal Rule of Evidence 401 and because whatever probative value they may have is substantially outweighed by a danger of unfair prejudice under Federal Rule of Evidence 403. *Pls.' Omnibus Mot. in Lim.* at 24-28.

The Plaintiffs argue that the Defendants' proposed Exhibits Fourteen through Twenty-Three are irrelevant because they are "from a time period that does not include February 4, 2014 (when [plaintiff] fell into the defendant's outdoor parking lot pothole)." *Id.* Specifically, the Plaintiffs claim that Exhibits Eighteen and Nineteen (cleaning invoices from November 26, 2012, and December 16, 2013) and Exhibits Twenty and Twenty-One (cleaning invoices from November 21, 2014, and December 14, 2015) cover irrelevant periods from before and after Ms. Laureano-Monge's fall. *Id.* In addition, the Plaintiffs claim that Exhibit Twenty-Four (photographs and an invoice for handicap access ramp repair from June 2015) and Exhibit Twenty-Five (photographs and an invoice for principal façade and hallway washing from March 2015) "are both from periods <u>after</u> plaintiff fell and neither is for the parking lot area where [Ms. Laureano-Monge] fell[.]" *Id.* at 25 (emphasis in original).

41

With some exceptions, the Court does not have enough information in this record to resolve the issue.   Exhibits Fourteen through Nineteen, Twenty-One, and Twenty-Three through Twenty-Five consist of yearly cleaning invoices from 2010 to 2013 and 2015.  According to the Proposed Pretrial Order, under the terms of a Lease Agreement between FFC and Supermax, FFC assumed the obligation to conduct daily inspections of the common areas and maintain all paving of the parking lot, and the Plaintiffs assert that the pothole into which Ms. Laureano-Monge fell would have been discovered by reasonable inspection pursuant to this obligation.  *Proposed Pretrial Order* at 4-5.  It is unclear whether these cleaning invoices could constitute FFC's long term compliance with the contractual obligations that the Plaintiffs maintain it violated.  Thus, the Court does not have sufficient information to rule these exhibits admissible or inadmissible.

However, Exhibit Twenty (an invoice for cleaning and maintenance of parking areas and hallways from 2014, the year when Ms. Laureano-Monge fell) and Exhibit Twenty-Two (a services contract for cleaning of the Grana commercial building executed on August 23, 2013, in effect during the time period of Ms. Laureano-Monge's fall) may be introduced into the evidentiary record because they are relevant to the time period of Ms. Laureano-Monge's fall.

The Plaintiffs insist that Exhibit Twenty-Two should nonetheless be excluded under Federal Rule of Evidence 401 for irrelevancy because it "relate[s] *prima facie* to 'the Grana commercial building' (an area that is not the parking lot area where [Ms. Laureano-Monge] fell into the pothole)."  *Pls.' Omnibus Mot.* at 25.  The Court

questions the Plaintiffs' assertion that the Grana commercial building does not encompass the area where Ms. Laureano-Monge fell because, as Defendants generally indicate, the Grana commercial building premises encompass the parking lot where Ms. Laureano-Monge fell, "which includes the SuperMax store." *Proposed Pretrial Order* at 38. Thus, the Plaintiffs' relevancy argument fails as to the admission of Exhibit Twenty-Two.

Finally, the Plaintiffs claim that "exhibit 28 relates *prima facie* to artificial lighting in the parking area of the SuperMax store[,] which is irrelevant because plaintiff fell into defendant's outdoor parking lot pothole just before 12:00 noon." *Id.* at 25-26. The Court agrees that evidence of the parking lot's nighttime lighting is irrelevant to Ms. Laureano-Monge's mid-day fall. Thus, pursuant to Federal Rule of Evidence 401, the Court excludes Exhibit Twenty-Eight from admission into the record.

In deciding to admit some exhibits from the relevant time period, the Court finds that the probative value of the invoices and contracts before and after the accident is not substantially outweighed by any unfair prejudice. These documents are central to FFC's defense that it properly maintained its premises free from dangerous conditions. *See* FED. R. EVID. 403.

The Court **GRANTS** in part, **DENIES** in part, and **DISMISSES** in part Plaintiffs' Fifth Objection to Defendants' Documentary Evidence (ECF No. 144). The Court excludes Defendants' Exhibit Twenty-Eight. The Court rejects the Plaintiffs' motion to exclude Defendants' Exhibits Twenty and Twenty-Two. The Court

dismisses without prejudice the Plaintiffs' motion as to Defendants' Exhibits Fourteen, Fifteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-One, Twenty-Three, Twenty-Four, and Twenty-Five.

### f.   Unspecified Photographs of the Premises

The Plaintiffs' sixth objection to FFC's documentary evidence opposes the admission of "Photographs of the premises in question for illustrative purposes," Defendants' Exhibit Thirty. *Proposed Pretrial Order* at 38; *Pls.' Omnibus Mot.* at 28. The Plaintiffs argue that FFC has not identified the photographs it will use at trial and assert that they reserve the right to object more fully when such photographs are identified. *Pls.' Omnibus Mot.* at 28.  Regarding the Plaintiffs' Sixth Objection to Defendants' Documentary Evidence (ECF No. 144), the Court **ORDERS** Plaintiffs and Defendants to meet and mutually stipulate which photographs of the accident site and premises shall be admitted into the record.  If necessary, the Plaintiffs may reinitiate this motion, but for the moment, the Court **DISMISSES** without prejudice Plaintiffs' Sixth Objection to Defendants' Documentary Evidence (ECF No. 144).

### g.   Plaintiffs' Answers to Interrogatories

The Plaintiffs next object to the admission of Ms. Laureano-Monge's answers to interrogatories, Defendants' Exhibit Thirty-One, and Ms. Marrero-Ilarraza's answers to interrogatories, Defendants' Exhibit Thirty-Two. *Pls.' Omnibus Mot.* at 29. The Plaintiffs argue that "Defendant FFC makes no showing that the use of plaintiffs' Interrogatory answers is allowed by law" and "[a]ccordingly, [these answers] are not admissible at trial." *Id.*

The Court agrees to an extent.  The Plaintiffs' answers to interrogatories are excluded because they are inadmissible hearsay unless used for impeachment purposes; however, this also means that the Plaintiffs' answers to interrogatories may be used for impeachment.

The Court **GRANTS** in part and **DENIES** in part the Plaintiffs' Seventh Objection to Defendants' Documentary Evidence (ECF No. 144).

### h.   Plaintiffs' Depositions

The Plaintiffs object to the admission of Ms. Laureano-Monge's deposition, Defendants' Exhibit Thirty-Three, and Ms. Marrero-Ilarraza's deposition, Defendants' Exhibit Thirty-Four.  *Pls.' Omnibus Mot.* at 30.  Plaintiffs argue "depositions should not be used when, as here, the witness is available" to provide live trial testimony.  *Id.*

The Court agrees in part once again.  Both Ms. Laureano-Monge and Ms. Marrero-Ilarraza are available to testify.  Plaintiffs' deposition testimonies are excluded because they are inadmissible hearsay unless used for impeachment purposes.  However, as with their answers to interrogatories, the Plaintiffs may be subject to cross-examination for impeachment based on the content of their prior sworn testimony.

The Court **GRANTS** in part and **DENIES** in part Plaintiffs' Eighth Objection to Defendants' Documentary Evidence (ECF No. 144).[10]

---

[10]    This ruling depends on Ms. Laureano-Monge's availability as a witness on her own behalf.

### i.      Conclusion

In conclusion, the Court **GRANTS** in part and **DENIES** in part Plaintiffs' Omnibus Motion in Limine to Exclude Defendants' Trial Witnesses and Documentary Exhibits (ECF No. 144).

## III.   DISCUSSION OF DEFENDANTS' MOTIONS IN LIMINE

### A.     Motion to Limit and Exclude Dr. Orlando Fernández's Expert Testimony (ECF No. 146)

FFC's first motion in limine requests that the Court limit the proposed expert testimony of the Plaintiffs' independent medical evaluator, Dr. Orlando Fernández. *Proposed Pretrial Order* at 34; *Defs.' Mot. to Limit Dr. Fernandez's Test.* FFC alleges that, "[a]ccording to his expert report, Dr. Fernández performed a physical examination of [Ms. Laureano-Monge], was provided a patient history dating back to February 4, 2014, and evaluated medical records." *Defs.' Mot. to Limit Dr. Fernández's Test.* ¶ 2. FFC submits that "[p]ursuant to FED. R. CIV. P. 26(a)(2)(B)(ii) and (iii), Dr. Fernández listed the medical records he reviewed for the purposes of rendering the 'result of his medical evaluation.'" *Id.* ¶ 3; *id.*, Attach. 1, *Physical Examination.* However, FFC asserts that Dr. Fernández "did not produce any addendum or amended report during discovery in this matter. The Plaintiffs did not announce any medical records for trial." *Id.* ¶ 4 (citing *Proposed Pretrial Order*). FFC requests that "[i]n light of the above, the Court should limit the scope of Dr. Fernández's testimony at trial to exclude any reference by the expert to any medical records that were not identified in his report and/or contained in the PDF files provided to him by Plaintiff[.]" *Id.* ¶ 5.

FFC argues that "[a]ny opinion testimony of Dr. Fernández during trial about documents he did not review for purposes of preparing his report cannot be allowed because it would violate [Federal Rule of Evidence] 702.  Further, any testimony during trial outside the scope of the medical records identified by the expert in his report would be inadmissible under [Federal Rules of Civil Procedure] 26(e)(1)(A) and 26(e)(2)."  *Def.'s Mot. to Limit Dr. Fernandez's Test.* ¶ 6.  FFC concludes that Federal Rule of Civil Procedure 26(a)(2)(B)(ii) "requires that an expert's report include the facts or data considered by the witness in forming his opinions.  The Plaintiffs' expert did not include any additional facts nor data other than what was identified in his report."  *Id.* ¶ 7.

In opposition to FFC's motion to limit the scope of Dr. Fernández's testimony, the Plaintiffs argue that the "motion in limine should be denied because it is based on a supposition that the content of Dr. Fernández's trial testimony will go beyond the bounds of FED. R. CIV. P. 26(a)(2) . . . It is about a controversy that doesn't exist." *Pls.' Combined Opp'n to Defs.' Mot. in Lim. to Limit the Test. of Pls.' Expert [Dkt. 146]; Exclude Pls.' Written Discovery Answers [Dkt. 147]; and as to Daily Inspection Reports Identified by Pls. [Dkt. 148]* at 2 (ECF No. 157) (*Pls.' Combined Opp'n*).

In an abundance of caution, recognizing Plaintiffs' pledge that Dr. Fernández's testimony will not go beyond the scope permitted by Federal Rule of Civil Procedure 26(a)(2), the Court **GRANTS** Defendant FFC's Motion in Limine to Limit the Scope of Expert Orlando Fernández's Testimony (ECF No. 146) to exclude any reference by

the expert to any medical records not identified in his report or contained in the files provided to Dr. Fernández.

## B. Motion to Exclude the Plaintiffs' Answers to Defendants' Interrogatories (ECF No. 147)

FFC's second motion in limine seeks to exclude the Plaintiffs' answers to Defendants' interrogatories and request for production of documents from the evidentiary record. *Def.'s Mot. to Exclude Answers*. The Plaintiffs indicated in the proposed pretrial order that they intend to use as evidence their answers to Defendants' interrogatories and request for production. *Proposed Pretrial Order* at 36. FFC argues that the Plaintiffs' own answers to interrogatories and to the request for production of documents constitute hearsay and are inadmissible under Federal Rule of Evidence 801 because "none of the exceptions to the hearsay rule come into play here[.]" *Def.'s Mot. to Exclude Answers* ¶¶ 2-5.

The Court agrees. The Plaintiffs' answers to the Defendants' interrogatories and request for production of documents are excluded because they are inadmissible hearsay. Thus, the Court **GRANTS** Defendant FFC's Motion in Limine to Exclude Answers to Written Discovery as Evidence at Trial (ECF No. 147).

## C. Motion to Exclude Photographs of the Accident Site and Pothole (ECF No. 149)

FFC's third motion in limine seeks to exclude the Plaintiffs' "photographs of the accident site and pothole" referenced in the proposed pretrial order because of "mishandling of electronic evidence that did not allow corroboration of metadata nor photograph authentication; and the fact that the photographs cannot be authenticated by the witnesses announced for trial." *Proposed Pretrial Order* at 35;

*Def.'s Mot. to Exclude Photographs* ¶ 20.  FFC also claims that "[n]o purpose nor identifying aspects of the evidence were informed to the Court" and that the Plaintiffs admitted during discovery that the photos "were taken by an individual who will <u>not</u> testify at trial" and "are <u>not</u> the original photographs."  *Def.'s Mot. to Exclude Photographs* ¶ 1-2 (emphasis in original).

The Plaintiffs respond with a request for sanctions, asserting that "defendant FFC filed this motion *in limine* knowing full-well that <u>its central allegations are simply not true</u>.  *Pls.' Opp'n to Defs.' Mot. to Exclude Photographs* at 1 (emphasis in original).  "The truth is that plaintiffs did provide defendant FFC with the original photographs in digital (jpeg) format" on October 4, 2018.  *Id.* at 2.  The Plaintiffs allege that FFC's reference to a June 18, 2018 email exchange, in which the Plaintiffs denied having the original digital versions of the photographs to produce as requested, is deliberately misleading.  *Id.* at 3.  "Plaintiffs <u>did produce the digital (jpeg) photographs; as requested by defendant FFC</u>."  *Id.* (emphasis in original).  "Indeed, they were produced before discovery closed on <u>October 31, 2018</u>."  *Id.* (emphasis in original).  The Plaintiffs characterize FFC's "impli[cation] that [plaintiffs' counsels' secretary at the time] may have manipulated the pdfs" as "a hoax on the court."  *Id.* at 5-6.  "All this mud is slung without a shred of factual support and despite defendant FFC having (since October 4, 2018; Ex. 1 and 2) the original jpeg photographs that destroys their claim."  *Id.* at 6.  The Plaintiffs assert that "the motion in limine (dkt. #149) by defendant FFC violates" ABA Model Rules of

Professional Conduct 3.1 and 3.3(1) regarding frivolous claims and false statements. *Id.* at 4.

The Court is not in a position based on the record before it to resolve the lawyers' charges and countercharges. To do justice to this roiling issue, the Court would be required to hold an evidentiary hearing or review a stipulated record, which neither party has requested or provided. From the Court's perspective, it would be unfortunate if the key question — whether the photographs are admissible — were lost amid allegations of professional misconduct and counsel were required to hire new counsel to represent themselves at any hearing involving allegations of professional misconduct.

In light of these contradictory accounts, regarding Defendant's Motion in Limine to Exclude "Photographs of the Accident Site and Pothole" as Announced by Plaintiffs (ECF No. 149), the Court **ORDERS** counsel for Plaintiffs and Defendants to meet and mutually stipulate which photographs of the accident site shall be admitted into the record. If counsel are unable to come to terms within twenty-eight days of the date of this order, the Court **ORDERS** counsel to inform the Court and the Court will schedule a videoconference of counsel to discuss further proceedings on this issue.

### D.    Motion to Exclude Daily Inspection Reports (ECF No. 148)

Integrand and Metropol's first motion in limine requests exclusion of the supposed "Daily Inspection reports of the parking area in front of the SuperMax," where Ms. Loreano-Monge suffered her accident, which the Plaintiffs proffered in the proposed pretrial order. *Proposed Pretrial Order* at 36; *Defs.' Mot. as to Inspection*

*Reports* ¶ 1.   The Defendants object to this evidence because the Plaintiffs never produced nor identified the daily inspection reports during discovery.   *Defs.' Mot. as to Inspection Reports* ¶ 1.   The Defendants argue that since discovery concluded before the Defendants obtained a copy of these daily inspection reports, their exclusion is warranted.   *Id.* ¶ 2, 4 (citing *Young v. Gordon*, 330 F.3d 76, 82-83 (1st Cir. 2003) (a party's "violation of a time-specific order was not cured by subsequent compliance at his leisure")).

The Plaintiffs rebut by stating that the daily inspection reports "refer to the records of daily inspections that defendant FFC was contractually obliged to make of the outdoor parking lot[.]"   *Pls.' Combined Opp'n* at 4.   The Plaintiffs allege that "Defendants refuse to stipulate that the daily inspections records do not exist, [*Proposed Pretrial Order* at 29]," and such "refusal contradicts [Defendants'] answer to plaintiffs' request for production of such records."   *Pls.' Combined Opp'n* at 4.   The Plaintiffs claim that the Defendants' first and second supplemental and amended answers to the Plaintiffs' interrogatories and request for production state that Defendants "had no records of inspection reports for the parking lot where [Ms. Laureano-Monge] suffered her accident."   *Id.*   "Thus, in light of defendants' refusal to stipulate that no such records exist, a live witness must so attest."   *Id.*   The Plaintiffs conclude that they "cannot produce documents that defendants say don't exist" because any daily inspection reports of the parking lot "are solely within [Defendants'] possession and control."   *Id.*

The Defendants' answers to Plaintiffs' interrogatories refer to daily inspections but do not suggest that those inspections resulted in daily reports. *Mot. Submitting Exs. to Pls. Omnibus Mot.*, Attach. 4, *Second Suppl. and Am. Answers to First Set of Interrogs.*, at 4, 6, 10. The Defendants' answers mention "maintenance directives" for daily inspections and state that "FH Administration employees also performed daily inspections" but do not confirm that employees filled out corresponding reports of their daily inspections. *Id.* Daily inspection reports are not listed among the "records of the maintenance provided to the SuperMax parking lot during the years from 2010-2015." *Id.* at 4-5.

The Court **GRANTS** Defendants' Motion in Limine as to Daily Inspection Reports Identified by Plaintiff in the Pretrial Report (ECF No. 148) to exclude Plaintiffs' proffered daily inspection reports because Plaintiffs have not offered any indication that they exist.

## IV.    CONCLUSION

The Court **DENIES** Plaintiffs' Motion in Limine (ECF No. 93), **GRANTS** Plaintiffs' Motion in Limine (ECF No. 138), **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion in Limine (ECF No. 144) and **GRANTS** Defendants' Motions in Limine (ECF Nos. 146, 147, and 148). In addition, the Court **NOTES** Defendants' Motion in Limine (ECF No. 149) and **ORDERS** Plaintiffs and Defendants to meet and mutually stipulate which photographs of the accident site and which "photographs of the premises in question for illustrative purposes" shall be admitted into the record.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 15th day of November, 2021